No. 3:25-cv-00281-S

_____

**In the**
**UNITED STATES DISTRICT COURT**
**for the**
**NORTHERN DISTRICT OF TEXAS**
**Dallas, Division**

_____

**In re With Purpose, Inc.,**
*Debtor*

_____

**With Purpose, Inc. and WPI Collateral Management, LLC,**
*Appellants*,

**v.**

**Scott M. Seidel and Jackson Investment Group, LLC,**
*Appellees.*

_____

**Appeal from the United States Bankruptcy Court**
**for the Northern District of Texas, Dallas Division**
*Honorable Michelle V. Larson, Bankruptcy Judge*
*Case No. 23-30246-MVL17*

_____

**APPELLANT WITH PURPOSE, INC's MOTION FOR STAY AND**
**INJUNCTION PENDING APPEAL AND BRIEF AND SUPPORT**

_____

**Frank J. Wright**
State Bar No. 22028800
frank@fjwright.law
**Jeffery M. Veteto**
State Bar No. 24098548
jeff@fjwright.law
**Law Offices of Frank J.**
**Wright, PLLC**
1800 Valley View Lane, Suite 250
Farmers Branch, TX 75234
Telephone: (214) 935-9100

**Jeffrey S. Levinger**
State Bar No. 122588300
jlevinger@levingerpc.com
**J. Carl Cecere (Of Counsel)**
State Bar No. 24050397
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave., Suite 2390
Dallas, TX 75202
Telephone: 214-855-6817
Facsimile: 214-817-4509

*Attorneys for With Purpose, Inc.*

# CORPORATE DISCLOSURE STATEMENT

The undersigned hereby certifies that neither With Purpose, Inc. nor WPI Collateral Management, LLC has any parent corporation and no publicly traded company holds more than 10 percent of its stock.

*/s/ Jeffrey S. Levinger*

Attorney of Record for With Purpose, Inc.

TABLE OF CONTENTS

Corporate Disclosure Statement ........................................................................... i

Index of Authorities ......................................................................................... iii

Preliminary Statement .................................................................................... 1

Factual and Procedural Background .................................................................. 5

Reasons for Granting Relief ........................................................................... 10

I.     Stay and injunctive relief are available pending appeal ......................... 10

II.    Appellants are legally entitled to injunctive relief. ............................... 11

III.   The factors for determining whether to grant equitable relief under
       Bankruptcy Rule 8007 all favor Appellants. ...................................... 14

    A.   Appellants have a substantial likelihood of succeeding on the merits. ................. 15

        1.   The appeal from the Conversion Order raises serious legal
             questions about whether and to what extent bankruptcy courts
             can invoke equitable grounds to refuse to a Chapter 7 to Chapter
             11 conversion. ........................................................... 15

        2.   The JIG Settlement Order also raises numerous substantial legal
             questions about the rights of secured creditors in the Fifth
             Circuit. ................................................................. 18

    B.   The Debtor and the Collateral Trustee will suffer irreparable harm in the
         absence of equitable relief pending appeal. ................................. 19

    C.   The balance of harms between the parties favors a stay. .................... 23

    D.   The public interest, and the interest of secured lenders, favors Appellants'
         requested equitable relief ................................................ 24

Conclusion ........................................................................................... 25

Certificate of Service .............................................................................. 27

## INDEX OF AUTHORITIES

**Cases**

*Arnold v. Garlock, Inc.*,
    278 F.3d 426 (5th Cir. 2001) ........................................................................ 14

*City of Oakland v. Holder*,
    961 F. Supp. 2d 1005 (E.D. Cal. 2013) ......................................................... 22

*Clabaugh v. Grant (In re Grant)*,
    BAP No. 15-035-WO, No. 16-6062 (10th Cir. Sept. 20, 2016 ) ................... 17

*Fed. Deposit Ins. Corp. v. Belcher*,
    Civ. No. 19-12561,
    2020 WL 242781 (E.D. La. Jan 15, 2020) ..................................................... 22

*Grogan v. Garner*,
    498 U.S. 279 (1991) ...................................................................................... 26

*Harrington v. Purdue Pharma L.P.*,
    144 S. Ct. 2071 (2024)................................................................................... 18

*In re Country Squire Assoc. of Carle Place*,
    203 B.R. 182 (B.A.P. 2nd Cir. 1996) ............................................................ 20

*In re Daughtrey*,
    896 F.3d 1255 (11th Cir. 2018) ..................................................................... 17

*In re First S. Sav. Ass'n*,
    820 F.2d 700 (5th Cir. 1987) ......................................................................... 14

*In re Guyana Dev. Corp.*,
    201 B.R. 462 (Bankr. S.D. Tex. 1996)........................................................... 12

*In re Herrera*,
    2010 WL 148182 (Bankr. W.D. Tex. Jan. 8, 2010) ...................................... 21

*In re Jacobsen*,
    609 F.3d 647 (5th Cir. 2010) ......................................................................... 16

*In re LTHM Hous. - Operations, LLC*,
    No. 14-33899, 2014 WL 6871560 (Bankr. S.D. Tex. Dec. 2, 2014) ............ 11

*In re Westwood Plaza Apartments, Ltd.*,
    150 B.R. 163 (Bankr. E.D. Tex. 1993)........................................................... 21

*Law v. Siegel*,
    571 U.S. 415, 425 (2014) ................................................................... 16, 17

*Marrama v. Citizens Bank of Massachusetts*,
    549 U.S. 365 (2007) ........................................................................... 16, 17

*Nichols v. Marana Stockyard & Livestock Mt., Inc.*,
    10 F.4th 956 (9th Cir. 2021) ...................................................................... 17

*Smith v. U.S. Bank Nat'l Ass'n (In re Smith)*,
    999 F.3d 452 (6th Cir. 2021) ...................................................................... 17

*Virginia Elec. Power Co. v. Westinghouse Elec. Corp.*,
    485 F.2d 78 (4th Cir. 1973) ........................................................................ 22

*Whalen v. Carter*,
    954 F.2d 1087 (5th Cir. 1992) .................................................................... 22

**Statutes**

11 U.S.C. § 105(a) .......................................................................................... 16

11 U.S.C. § 363(m) .......................................................................... 3, 18, 19, 20

11 U.S.C. § 704(a) .......................................................................................... 11

11 U.S.C. § 706(a) .................................................................................... 15, 16

**Rules**

FED. R. BANKR. P. 8007 ................................................................................ 2, 10

FED. R. BANKR. P. 8007(a) ............................................................................... 10

FED. R. BANKR. P. 8007(a)(1)(A), (C) .............................................................. 11

FED. R. BANKR. P. 8007(b) ............................................................................... 10

PRELIMINARY STATEMENT

This case concerns the Chapter 7 bankruptcy of With Purpose, Inc. ("With Purpose" or the "Debtor"), a company that operated GloriFi, a banking and finance company focused on serving consumers with conservative values. The appeal in this case arises from a series of orders entered in the bankruptcy proceeding that directly, severely, and unlawfully interfere with the rights of the Debtor, the Debtor's Estate, and the Debtor's creditors, which include WPI Collateral Management, LLC, the collateral agent for certain of the Debtor's secured creditors (the "Collateral Agent").

On January 22, 2025, the Bankruptcy Court entered a *Memorandum Opinion Denying Conversion to Chapter 11 and Granting the Trustee's Compromise with Jackson Investment Group Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Memorandum Opinion"). (App. 622)[1] On January 24, 2025, it entered an *Order Denying Motion to Convert Case to Chapter 11* (the "Conversion Order") (App. 691) and *Order Granting Trustee's Motion for Approval of Compromise and Settlement with, and Sale to, Jackson Investment Group, LLC* (the "JIG Settlement Order") (App. 693).

The Debtor and Collateral Agent have appealed from those orders (collectively the "Orders on Appeal") and intend to seek certification of the appeal directly to the Fifth Circuit. (App. 792) In the Orders on Appeal, the Bankruptcy Court refused the Debtor's request to convert the case from a Chapter 7 dissolution to a Chapter 11 reorganization. The Bankruptcy Court instead granted approval of a purported "settlement" empowering

---

[1] The Appendix with relevant pleadings is being filed contemporaneously with this Motion.

the Chapter 7 Trustee to convey some of the Estate's assets, and assign control of its valuable causes of action, to one of the entities that would be a defendant in those causes of action.[2] Ironically, the Trustee at one point recognized that this very entity drove the company into bankruptcy in league with others who did the same (the "Outside Investors").

The Debtor and the Collateral Agent (collectively "Appellants") now require equitable relief pending appeal pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure to ensure that the relief they seek in the appeal from the Orders on Appeal can be properly effectuated.[3] And because the need for that relief is time-sensitive, Appellants request that any briefing deadlines on this Motion be accelerated to ensure that the Court has an adequate opportunity to rule on such relief before any statutes of limitations run on the causes of action at issue during the pendency of the appeal and before the Trustee and the counterparty to the agreement can take actions detrimental to the Estate.

The main issue in the appeal—and the "soul" of the bankruptcy case (App. 427)— concern control over the Estate's largest asset: its causes of action against various GloriFi directors, officers, and investors. The motion to convert the case to Chapter 11, which the Bankruptcy Court denied with the Conversion Order, was supported by the Collateral Agent and would have enabled the Debtor, under the control of its Chief Restructuring Officer, former Bankruptcy Judge Leif Clark, to reorganize and pay off creditors using

---

[2] The Trustee originally presented this agreement as a "settlement," while the Bankruptcy Court described it as a "sale." In reality, it is neither.

[3] The Collateral Agent is contemporaneously filing a joinder to this Motion, noting additional arguments specific to its position.

2

proceeds from the prosecution of these causes of action. (App. 246) The request to convert was supported by all the secured creditors and a significant number of unsecured creditors, including several major law firms, as well as a majority of the shareholders. (App. 246-47) And it was accompanied by a draft plan of reorganization, restructuring support agreement, draft disclosure statement, draft complaint against the asserted wrongdoers, and $2 million of debtor-in-possession financing. (App. 249-51)

By contrast, the competing settlement that the Bankruptcy Court approved with the JIG Settlement Order would gut the Debtor, transfer its assets (including the valuable trade name "GloriFi") to competitors, and hand over control of its valuable causes of action to the Jackson Investment Group, LLC ("JIG"), which is included among, and allied with, the Outside Investors who are the targets of those causes of action.

The need for equitable relief pending appeal arises as a consequence of the terms of the Orders on Appeal. The JIG Settlement Order purports to "sell" the Debtor's assets (including its causes of action against the Outside Investors) to JIG. And pursuant to 11 U.S.C. § 363(m), "sales," once effectuated, cannot be unwound on appeal. In a misplaced effort to moot this appeal, the Trustee and JIG claim to have begun implementing the JIG Settlement Order—through a series of agreements purporting to effectuate the settlement— even though the settlement was amended and has not received Bankruptcy Court approval in its final form. (App. 986-89)

The need for immediate equitable relief also arises because, while the Trustee indicates that he and JIG will sue the directors, officers, and investors aligned with the Collateral Agent's effort to *save* the company, the Trustee has refused demands to sue those

3

aligned with JIG's effort to *scuttle* the company—despite having previously acknowledged the existence of colorable and valuable causes of action against JIG and its allies. And once JIG assumes control over the causes of action against the Outside Directors, it will unquestionably halt any effort to sue them. And there is a risk that the statutes of limitations on these claims could run before the appeal of this case is finally decided.

Accordingly, this Court should stay the implementation and consummation of the provisions in the JIG Settlement Order purporting to hand over control of the causes of action against the Outside Investors to JIG, and prevent the Bankruptcy Court, the Trustee, and JIG from taking any of the following actions:

1. approving the final form of the JIG Settlement Agreement;

2. transferring control to JIG over any causes of action against the Outside Investors;

3. compromising any causes of action belonging to the Debtor's estate;

4. disbursing or distributing the proceeds from JIG's payment to the Trustee; and

5. halting, dismissing, settling, or otherwise compromising any pending litigation against the Outside Investors, including pre-petition arbitrations that With Purpose's board authorized to file against the Outside Investors months before the bankruptcy filing.

Furthermore, the Court should order the Trustee to at least file suit against the Outside Investors or assign the right to do so to the Collateral Agent (even if the lawsuit is subsequently stayed or abated). If these actions are not taken, the ability to sue the Outside Investors will be compromised, and even if the Orders on Appeal are overturned, the engine that could drive the Debtor's reorganization and pay creditors could be lost forever.

Equitable relief pending appeal is therefore required to ensure that Appellants' challenges to the Orders on Appeal are effective, if they are ultimately successful.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

With Purpose, Inc., under the moniker GloriFi, aimed to provide a comprehensive package of financial products, including credit cards, banking, insurance, mortgage, and brokerage services, to 100 million Americans looking for such services from a company that shared their conservative values. (App. 178, ¶7) Recognizing the potential in this underserved market, investor Toby Neugebauer founded GloriFi in 2021, serving as CEO and its largest shareholder. (App. 262-63, 289, ¶¶2, 77) Within months of its launch, GloriFi's valuation skyrocketed, quickly exceeding $1 billion. (App. 263-64, 282, ¶¶3-4, 65) The strength of the GloriFi concept soon attracted some of the biggest names in conservative politics and venture capital to serve as its executives, directors, or outside investors—names like Nicholas Ayers, former Chief of Staff of Vice President Mike Pence; Peter Thiel, legendary technology investor and founder of PayPal; Jeffrey Sprecher, whose company InterContinental Exchange owns the New York Stock Exchange; and billionaire and former presidential candidate Vivek Ramaswamy (collectively with those listed below the "Outside Investors").[5] (App. 280-83, ¶¶ 61-63, 66) But rather than

---

[4] The Debtor and Collateral Agent first sought this relief from the Bankruptcy Court (App. 1043, 1057, 1223), but that court entered an Order Denying Motion for Stay Pending Appeal on February 4, 2025 (App. 1265). The Bankruptcy Court's reasons for denying the motion are set forth in its Order and will be addressed below.

[5] Other Outside Investors include: Citadel LLC, Richard Jackson, Joseph Lonsdale, the Founders Fund VII, LP, the Founders Fund VII Entrepreneurs Fund, L.P., the Founders Fund VII Principals Fund, LP, Cason Carter, GFNCI LLC, Ayers Family Holdings LLC, J. Nicholas Ayers (Continued . . .)

contribute to Neugebauer's vision for GloriFi, these Outside Investors had designs to seize GloriFi and its confidential business plans for themselves and their competing businesses.

Originally, the Outside Investors sought to wrest control of GloriFi by preventing it from obtaining needed financing. (App. 279, ¶57) When GloriFi was able to obtain alternative sources of funding despite these efforts (App. 284-85, ¶68), the Outside Investors decided instead to drive the company into bankruptcy and misappropriate its confidential information and intellectual property in order to fund competitors they had invested in, such as "Coign," "Strive," and others (App. 284, 287-88, 354-68, ¶¶67, 72, 74-75, 201-223). To do so, the Outside Investors embarked on a scheme of defamation and disparagement about the company and its leadership to hinder its ability to obtain regulatory approvals, financing, and additional investors. (App. 262-63, ¶2)

Eventually, the scheme was successful, and With Purpose was forced to seek bankruptcy protection under Chapter 7 in February 2023. (App. 2) One of the Debtor's central assets was its causes of action against the Outside Investors for driving the company into bankruptcy—causes of action that the Trustee has admitted are the "soul of the case." (App. 427) Once the Chapter 7 Trustee, Scott Seidel, was appointed, he conducted an investigation involving "review of hundreds of thousands of pages of discovery" through which he learned "facts that likely support[ed] potential Causes of Action related to the demise of the Debtor against the 4 to 6 upper tier management parties" and identified

---

2021 Irrevocable Trust, Jackson Investment Group, LLC, the Lonsdale Family Revocable Trust, Descante Capital, LLC, Vivek Ramaswamy Investments LLC, Seven Talents, LLC, amongst others. (*See* App. 264-70, ¶¶7-35)

causes of action "against many of those who were in positions of power or influence within the Debtor's organization"—including both Neugebauer and the Outside Investors. (App. 192-93, ¶¶10-11), App. 207 ("[T]he Trustee believes that colorable causes of action exist against everyone that the proverbial finger had been pointed at, included Neugebauer and the early investors.").

Controversy soon erupted over how and by whom these causes of action ought to be asserted. Initially, the Debtor filed a motion to convert the case from a Chapter 7 to a Chapter 11 in part to resolve how and by whom the causes of action would be asserted. (App. 628) The Trustee, however, approached the Collateral Agent and Neugebauer about pursuing the causes of action under a "joint prosecution agreement" with the Trustee. (App. 629-30) The parties agreed to that arrangement and the Trustee sought bankruptcy court approval to pursue it through a *Motion for Approval of Compromise and Settlement Under Bankruptcy Rule 9019 with the Collateral Agent and with Neugebauer Parties and for Approval of Postpetition Financing* (the "Collateral Agent 9019 Motion"). (App. 203)

But then JIG, which is included among and aligned with the Outside Investors, attempted to thwart the effort to hold itself or any of the Outside Investors liable for GlorFi's demise. JIG approached the Trustee with an alternate plan in which it would purchase the valuable intellectual property rights associated with the "GloriFi" name and contribute $6 million to obtain the "right to pursue estate causes of action"—or not pursue them, which almost certainly would occur as to the claims against itself and the Outside Investors. (App. 630) JIG set up a new company, GloriFi Acquisitions, LLC, to provide

7

the $6 million in funding and assume control of the causes of action. (App. 660) Nothing in this proposal addressed the issue of who owned the causes of action.

Despite having already entered into a binding agreement with the Collateral Agent, for which it had sought Bankruptcy Court approval, the Trustee abandoned that agreement and deemed JIG's offer to be "higher and better" than the settlement memorialized in the Collateral Agent 9019 Motion simply because JIG's offer provided more cash for the Trustee and his attorneys. (App. 629-30, citing App. 224) Having abandoned the settlement with the Collateral Agent, the Trustee then sought approval for his settlement with JIG in the *Motion for Approval of Compromise and Settlement under Bankruptcy Rule 9019 and Sale of Assets* (the "JIG Settlement Motion"). (App. 230) The Trustee also sought and obtained a temporary injunction prohibiting the Collateral Agent, Neugebauer, or anyone else from pursuing any action against the Outside Investors on their own. (App. 1043)

Meanwhile, the Debtor, with the support of "all secured creditors and a significant portion of [the] unsecured creditors," as well as a majority of the shareholders, pursued the previously-filed motion seeking to convert the case from a Chapter 7 liquidation to a Chapter 11 reorganization that would be funded with proceeds from the causes of action against the Outside Investors. *See Amended Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code* ("Motion to Convert"). (App. 246-47) This was no ordinary request for conversion: It was a well-thought-out and complete plan of reorganization, accompanied by a draft of the Chapter 11 plan, a draft disclosure statement, restructuring support agreement, a draft complaint against the Outside Investors,

8

$2 million of debtor-in-possession financing, and a commitment from former Bankruptcy Judge Leif Clark to serve as the Chief Restructuring Officer. (App. 249-52)

The Bankruptcy Court heard both the Motion to Convert and the JIG Settlement Motion over seven days in September and October 2024. (App. 634) Despite recognizing that some of the causes of action might soon be facing potential statutes of limitations (App. 657), the Bankruptcy Court waited nearly two months to orally announce (in a non-appealable manner) that it would deny the former and grant the latter—although the court ordered modifications before the settlement embodied in the JIG Settlement Motion could become effective (App. 622). And the Bankruptcy Court waited yet another month before issuing its written Memorandum Opinion and the Orders on Appeal on January 22 and 24, 2025, knowing that at least one statute of limitations under 11 U.S.C. § 108 was going to expire on February 8, 2025. (App. 622, 691, 693)

The Trustee has indicated he will sue several former GloriFi directors aligned with the Collateral Agent and Neugebauer. (App. 715, 728-31) But the Trustee has refused to sue JIG or any of the Outside Investors aligned with it, despite knowing the importance and viability of the causes of action. And the Bankruptcy Court has enjoined others, including the Collateral Agent and Neugebauer, from bringing suit on their own. (App. 1043) Furthermore, after the Bankruptcy Court granted the JIG Settlement Motion, the Trustee and JIG purported to close via a January 28, 2025 Agreement (the "New Jackson Agreement"), which is different from the original agreement and remains subject to court

approval, but which would, when approved, purport to effect a supposed "sale" of the Estate causes of action, along with other Estate property, to JIG. (App. 986-87)[6]

Accordingly, as things stand now, if the Orders on Appeal are not stayed, as set forth above, any decisions JIG might make concerning the disposition of Estate causes of action against the Outside Investors could become irreversible even after a successful appeal. And if the Trustee is not compelled, or someone else is not authorized, to at least file suit against the Outside Investors, the Estate will lose a potential recovery that could be used to pay claims, and further imperil the Debtor's ability to obtain full relief on its appeal from the Orders on Appeal. After all, if the Conversion Order is reversed, and the case is converted to a Chapter 11 reorganization, then monetization of the claims against the Outside Investors will provide an enormous benefit to the reorganization effort. Likewise, if the JIG Settlement Order is reversed in whole or in part, then the Collateral Agent's settlement becomes the highest and best offer—and that settlement too contemplates asserting the causes of action against the Outside Investors. Either way, the appellate rights of both the Debtor and the Collateral Agent will be adversely affected without the relief they now seek.

## REASONS FOR GRANTING RELIEF

### I. Stay and injunctive relief are available pending appeal

Pursuant to Federal Rule of Bankruptcy Procedure 8007, this Court has the power

---

[6] The Trustee is not purporting to "sell" any causes of action; instead, he is merely transferring control to JIG over whether and against whom to assert them. Appellants disagree that a trustee can permissibly "sell" control over claims without selling the claims themselves. But Appellants raise this issue because the JIG Settlement Order broadly described the agreement between the Trustee and the JIG as a "sale."

to order equitable relief during the pendency of an appeal—with or without such relief first being sought in the bankruptcy court. *See* FED. R. BANKR. P. 8007(a) & (b). But "if a motion has already been made in the bankruptcy court," the moving party must "state whether the court ruled on it." *Id*. In this case, Appellants moved for a stay in the Bankruptcy Court, which denied their motion on the evening of February 4, 2025 after conducting a hearing that same day. (App. 1264)

The relief available under Rule 8007 can take several forms, including: "a stay of the bankruptcy court's judgment, order, or decree pending appeal" or "an order . . . granting an injunction while an appeal is pending." FED. R. BANKR. P. 8007(a)(1)(A), (C). And in this case, it is necessary for the Court to enter both an order staying portions of the Orders on Appeal *and* an order granting an injunction requiring the Trustee either to file suit against the Outside Investors or assign its right to someone like the Collateral Agent, who is entitled to bring a derivative action on behalf of the Estate.

## II.    Appellants are legally entitled to injunctive relief.

As an initial matter, there is no legitimate question that the Court has the power to award the injunctive relief that Appellants are requesting. Such preliminary injunctions commonly issue to "preserve the status quo" pending resolution of the appeal, *City of Dallas v. Delta Air Lines, Inc*., 847 F.3d 279, 285 (5th Cir. 2017) (internal quotation omitted), or to force a person to comply with a "mandatory duty." *Long Island Rail Road Co. v. Brotherhood of Railroad Trainmen*, 185 F. Supp. 356, 358 (E.D. N.Y. 1960). Both grounds for injunctive relief are present because the Trustee has a mandatory fiduciary duty

to preserve the assets of the Estate. And he must be ordered to perform that duty by at least filing the Estate causes of action to prevent them from potentially expiring as limitations run during the pendency of the appeal.

Pursuant to 11 U.S.C. § 704(a), a Chapter 7 trustee has a fiduciary duty to "collect and reduce to money the property of the estate for which such trustee serves" and to "be accountable for all property received[.]" "It is fundamental that a chapter 7 trustee's fiduciary duties are non-delegable." *In re LTHM Hous.-Operations, LLC*, No. 14-33899, 2014 WL6871560, at *3 (Bankr. S.D. Tex. Dec. 2, 2014). "The trustee and only the trustee is ultimately responsible for the administration of the estate, including most significantly the safeguarding and responsible disposition of estate assets[.]" *Id.* at *4 (quoting *In re Guyana Dev. Corp.*, 201 B.R. 462, 476-77 (Bankr. S.D. Tex. 1996) (internal citation omitted)). That duty to maximize the recovery for the Debtor's estate and its creditors compelled the Trustee to timely file suit against the Outside Directors—and when the Trustee refused, that same duty compelled the Bankruptcy Court to order the Trustee to file suit or authorize someone else to do so.

There is no obstacle preventing suit against the Outside Investors from merely being filed. The Trustee has acknowledged that the Estate has colorable and valuable causes of action against the Outside Investors that could bring hundreds of millions of dollars into the Estate. (App. 178-80, 192-94, 203, 229) The sole reason the Trustee initially offered to for refusing to bring that suit (and for recommending against converting the case to a Chapter 11 reorganization) was the lack of "estate resources" to pursue those objectives. (App. 659) Yet the Trustee need not marshal all the resources to fund the entire lawsuit at

12

this point—if resources are a concern, he need only file suit and abate it pending resolution of the Debtor's appeal, or approve derivative standing for the Collateral Agent. And the work required for the Trustee to take the minimal step of filing suit has already been done for him: The Debtor attached to its motion to convert a draft complaint against the Outside Investors. (*See* App. 261) The Trustee need only file it.

Furthermore, while the Trustee recently intimated that he has changed his mind about the merits of the claims against the Outside Investors, fearing they will present a "counter-narrative" to the other claims that he and JIG desire to pursue (App. 1278), the Trustee could solve that concern too by assigning the right to pursue the claims to someone like the Collateral Agent or Neugebauer, either of whom is willing to file and pursue them. What the Trustee *cannot* do, however, is let the causes of action lapse due to limitations or be compromised for nominal sums, when it is within the Trustee's duties and powers to preserve them and maximize their value. The Bankruptcy Court's refusal to recognize that basic principle is precisely why Rule 8007 makes injunctive relief available.

The Bankruptcy Court's own reasons for refusing to compel action from the Trustee are similarly unavailing. At various points, the Bankruptcy Court has stated that Appellants have failed to identify any actual expiring statutes of limitations. (App. 1037, 1267) But the Debtor made clear exactly which claims were at risk of expiring under applicable statutes of limitations—both in its initial motion to compel the Trustee to bring suit and in its motion for stay. (App. 713, 719, 1058-59) The Bankruptcy Court also identified a lack of "legal authority" to force the Trustee to bring suit—despite acknowledging both the Trustee's fiduciary duty to maximize the Estate's recovery and the court's

own "independent duty to protect the estate" (App. 1040) including the flexibility afforded by Rule 8007(a)(1) and (a)(2). The Bankruptcy Court further determined that the requested relief would "force" the Trustee to "breach" the JIG Settlement and jeopardize the funds paid by JIG (App. 1038), but that is untrue because nothing in the settlement *forecloses* the assertion of the causes of action against the Outside Investors (including JIG itself), or *requires* those claims be released or compromised. And the court never explained how a party can breach a contract when the actions it takes (or does not take) are *court ordered*.

Accordingly, none of the rationales offered by the Bankruptcy Court or the Trustee can justify refusing to order the Trustee to file suit against the Outside Investors or at least assign the Collateral Agent the right to do so. And the Court should issue an injunction pending appeal requiring the Trustee to take either of those actions.

## III.  The factors for determining whether to grant equitable relief under Bankruptcy Rule 8007 all favor Appellants.

It is also clear that the factors courts consider in determining whether to grant equitable relief pending appeal all favor Appellants. In considering such requests for relief under Bankruptcy Rule 8007, courts are directed to consider the following criteria:

(1) the likelihood that the movant will prevail on the merits of the appeal;

(2) whether the movant will suffer irreparable injury if the stay is denied;

(3) whether other parties would suffer substantial harm if the stay is granted; and

(4) whether the public interest will be served by granting the stay.

*In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987). Here, those criteria all favor granting Appellants the equitable relief they are requesting.

14

**A.    Appellants have a substantial likelihood of succeeding on the merits.**

With respect to the first element for obtaining equitable relief, the Fifth Circuit has relaxed the standard by making clear that a movant need not always show a probability of success on the merits. *In re First S. Sav. Ass'n,* 820 F.2d at 709 n.10.  Under this relaxed standard, the movant "need only present a substantial case on the merits when a serious legal question is involved" and demonstrate that the "balance of the equities weighs heavily in favor of granting the stay." *Arnold v. Garlock, Inc*., 278 F.3d 426, 439 (5th Cir. 2001) (internal quotation omitted).

That threshold showing is met here because Appellants' challenges to the Orders on Appeal will present numerous serious and meritorious legal questions that have not been resolved in the Fifth Circuit and have been favorably resolved by other circuit courts.

**1.    The appeal from the Conversion Order raises serious legal questions about whether and to what extent bankruptcy courts can invoke equitable grounds to refuse to a Chapter 7 to Chapter 11 conversion.**

The first of these serious legal questions arises from the Conversion Order. Those questions concern whether—and to what extent—a bankruptcy court has equitable discretion to deny a debtor's request to convert a case from a Chapter 7 liquidation to a Chapter 11 reorganization. Under 11 U.S.C. § 706(a), "[t]he debtor may convert a case under this chapter [Chapter 7] to a case under chapter 11, 12, or 13 of this title at any time." That language clearly makes the question whether a case should be converted from Chapter 7 to Chapter 11 a matter within the debtor's sole discretion: The "may" gives the debtor the election to decide whether (and when) to file a conversion motion, and the bankruptcy court is bound to allow the election, subject only to narrow (and inapplicable) statutory

15

limitations, prohibiting conversion where the case had previously "been converted" to a Chapter 7 in certain enumerated circumstances (under section 706(a)), or where the debtor seeking conversion to Chapter 11 cannot be "a debtor under such chapter" (under section 706(d)). Through these provisions, Congress intended to "give[] the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual payment plan case." S. Rep. No. 95–989, p. 94 (1978); *see also* H. R. Rep. No. 95–595, p. 380 (1977) (using nearly identical language). And under the plain language of these provisions, a bankruptcy court has no power to deny conversion on equitable grounds.

Yet in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 374 (2007), the U.S. Supreme Court suggested in a 5-4 decision, in the context of an attempted conversion to Chapter 13, that this "absolute"-*seeming* right was subject to an unenumerated exception for "bad faith" misconduct—based on a bankruptcy court's equitable powers under section 105 to enter orders "'necessary or appropriate to carry out the provisions'" of the Code. 549 U.S. at 374 (quoting 11 U.S.C. § 105(a)). The Fifth Circuit has interpreted *Marrama* to subject the debtor's power to convert a case to an equitable exception allowing bankruptcy courts to deny conversion for "bad faith." *See, e.g.*, *In re Jacobsen*, 609 F.3d 647, 649 (5th Cir. 2010). And the Bankruptcy Court took the Fifth Circuit's endorsement of *Marrama* as permission to engraft onto section 706(a) an even broader suite of equitable considerations beyond "bad faith"—allowing it to take into account such unenumerated considerations as whether the conversion was likely to be unsuccessful or "futile", whether, in the court's estimation, the conversion was for a "litigation advantage," or whether it might cause "delay." (App. 643-46) The court then offered these purely atextual equitable

16

considerations as justification for giving no weight to the wide support the Debtor's request for a Chapter 11 conversion elicited from secured creditors, many unsecured creditors, and other sophisticated entities. (*Id.*)

But in so holding, the Bankruptcy Court ignored the effect of the U.S. Supreme Court's subsequent decision in *Law v. Siegel,* 571 U.S. 415 (2014), in which the Court unanimously rejected *Marrama*'s dictum that bankruptcy courts possess the broad equitable authority to deny conversion because section 105 confers no "general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct," and could not authorize a bankruptcy court to take actions that conflict with "specific," "explicit," and "express" language of the Bankruptcy Code. *Id.* at 425.

Following *Siegel*, several circuits have considered *Marrama*'s continuing vitality—and found it lacking. *See Nichols v. Marana Stockyard & Livestock Mt., Inc*., 10 F.4th 956, 963 (9th Cir. 2021) (rejecting *Marrama*'s "expansive" reading of "§ 105(a) [to] empower[] a bankruptcy court to disregard the express language" of the Code); *Clabaugh v. Grant (In re Grant)*, 658 Fed. Appx. 411 (10th Cir. Sept. 20, 2016) (holding that *Siegel* "refined *Marrima*'s holding"); *Saris Realty, Inc. v. Bartlett* (*In re Bartlett*), BAP No. CC-17-1364, 2018 WL 3468832 (B.A.P. 9th Cir. Jul. 18, 2018) (holding that *Siegel* "reversed" *Marrama*); *Smith v. U.S. Bank Nat'l Ass'n (In re Smith)*, 999 F.3d 452, 455-56 (6th Cir. 2021) (holding that *Siegel* "rejected" *Marrama's* "dictum" about the existence of equitable exceptions to the Code). By contrast, other circuits have held that *Siegel* leaves undisturbed *Marrama*'s equitable exception to section 706(a)'s absolute right of conversion. *See, e.g.*, *In re Daughtrey*, 896 F.3d 1255, 1276 (11th Cir. 2018) (holding that after *Siegel*,

17

bankruptcy courts retain equitable discretion to evaluate whether conversion is likely to be successful). The Fifth Circuit, however, has not yet weighed in on this emerging and important issue. That alone demonstrates that substantial questions exist to support the grant of equitable relief pending appeal.

### 2.    The JIG Settlement Order also raises numerous substantial legal questions about the rights of secured creditors in the Fifth Circuit.

The appeal of the JIG Settlement Order also raises numerous substantial legal questions that warrant equitable relief pending appeal.  In particular, the Settlement assigns control of causes of action belonging to the Estate to *one of the targets* of those causes of action—who will assuredly refuse to assert them or nominally compromise them even through they would otherwise yield a substantial recovery for the Estate. This arrangement raises numerous substantial legal questions that must be resolved on appeal, including:

- whether assigning control of Estate claims to JIG's agent, a non-debtor (and also not a true creditor), represents an improper *de facto* non-consensual release of claims against a non-debtor in violation of *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024) (holding the Code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seek to discharge claims against a non-debtor without the consent of affected claimants);

- whether the Trustee can, consistent with his fiduciary duty to maximize recovery for the Estate, permissibly assign control over Estate claims to a third party with such conflicts of interest that it will inevitably refuse to pursue those claims;

- whether the JIG Settlement represents a "sale" of assets that triggers the applicability of 11 U.S.C. § 363(m) whether it constitutes a "settlement" (or neither);

- whether JIG is a good-faith purchaser given its conflicts of interest;

- whether a settlement can be approved when the Trustee failed to disclose to creditors that the third party to which it is assigning control over claims will not pursue the most valuable of those claims; and

- whether the bankruptcy court was empowered to allow JIG's claim without hearing the Collateral Agent's timely objection.

Appellants are likely to prevail on the merits of these novel questions.

### B.    The Debtor and the Collateral Trustee will suffer irreparable harm in the absence of equitable relief pending appeal.

It is equally clear that the Debtor and the Collateral Agent will suffer irreparable harm in the absence of equitable relief pending appeal. Unless further implementation of the JIG Settlement Order is halted, JIG will be immediately empowered to take actions detrimental to the Estate—including permanently compromising, dismissing, or not asserting Estate causes of action against the Outside Investors.

It will be difficult to correct this multifaceted mischief on appeal. The JIG Settlement Order grants the Trustee authority to "sell" Estate causes of action to JIG, and they will inevitably argue that the purported "sale" approved in that settlement will moot this appeal. And they will likely invoke 11 U.S.C. § 363(m), which provides: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

The Sale Order specifically designates JIG's "Agent" as a "good-faith purchaser within the meaning of 11 U.S.C. 363(m)," in an obvious effort to prevent the settlement from being unwound and potentially render the appeal moot. Although Appellants will demonstrate that merely assigning control over causes of action to a third party is not a sale, the risk that an appeal of what is described as a "sale" may be rendered moot is the "quintessential form of prejudice" for which a stay is appropriate. *In re Country Squire Assoc. of Carle Place*, 203 B.R. 182, 183 (B.A.P. 2nd Cir. 1996). This is especially true when, as here, the transaction is invalid. Accordingly, a stay pending appeal is necessary to preserve the rights of all parties and avoid irreparable injury.

The Bankruptcy Court disagreed with this reasoning, concluding that "the mere threat of mootness is not sufficient to constitute irreparable harm." (App. 1274) But the case the Bankruptcy Court cited to reach that conclusion, *SR Constr. Inc. v. Hall Palm Springs, LLC*, No. 3:20-CV-3487-B, 2020 WL 7047173, *3 (N.D. Tex. Dec. 1, 2020), does not concern the familiar jurisdictional doctrine of "Article III mootness" that is implicated by a "sale" of assets under section 363(m), but instead involves a non-jurisdictional concept of "equitable mootness," a bankruptcy-specific form of "appellate abstention" that "relates to appellate review of orders confirming reorganization plans." *In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009). That doctrine suggests that a bankruptcy plan should not be reversed on appeal when "unwinding [the plan] will have an adverse effect on third-parties and will prevent a successful reorganization." *Id.* at 240. But this is not an appeal from the confirmation of a Chapter 11 plan of reorganization. It is a challenge to a purported settlement with one entity, and the issues here do not concern equitable

20

mootness, but true statutorily mandated mootness. Accordingly, the case law cited by the Bankruptcy Court is inapposite.

Furthermore, while certain district courts in Texas have suggested that a risk of equitable mootness should not be enough to constitute irreparable harm sufficient to obtain a stay (because it would essentially allow the doctrine of equitable mootness to be avoided), *see SR Constr. Inc*., 2020 WL 7047173, *3 (collecting cases), *other* courts have held that even a risk of equitable mootness justifies a stay—especially in light of cases from the Fifth Circuit questioning the continuing validity of the equitable-mootness doctrine. *In re Herrera,* 2010 WL 148182, *3 (Bankr. W.D. Tex. Jan. 8, 2010) ("Given the Fifth Circuit's recent observations regarding equitable mootness in the context of stays pending appeal … this court is inclined to follow [Bankruptcy] Judge Gerber's cautious approach" and find that the possibility of mootness constitutes irreparable harm when asking for a stay pending appeal); *In re Westwood Plaza Apartments, Ltd.,* 150 B.R. 163, 169 (Bankr. E.D. Tex. 1993) (finding irreparable harm when consummation of a plan would "render any challenges to the consummation moot").

In any event, the risk of mootness is not the only irreparable harm that Appellants will suffer if a stay does not issue. Although the Debtor and the Collateral Agent have timely appealed from the Orders on Appeal, there is a substantial question whether the statute of limitations will run on some of the Estate causes of action before the appeal can be decided. Accordingly, unless the Court directs the Bankruptcy Court to order the Trustee to bring suit or assign the responsibility to bring suit to someone else, causes of action that the Estate has against the Outside Investors may be irretrievably lost, and irreparable harm

21

will result. The harm that could result from the expiration of limitations has been deemed sufficient to make alternative forms of relief inadequate and make equitable relief pending appeal necessary. *See Whalen v. Carter*, 954 F.2d 1087, 1097 (5th Cir. 1992) (concerning joinder) (citing *Virginia Elec. Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 86 n. 22 (4th Cir. 1973)) ("remedy" in another forum "may be inadequate if statute of limitations would bar commencement of suit"); *see also City of Oakland v. Holder*, 961 F. Supp. 2d 1005, 1013 (E.D. Cal. 2013) (holding that the risk that limitations would "moot" legal claims constituted irreparable injury); *Fed. Deposit Ins. Corp. v. Belcher*, Civ. No. 19-12561, 2020 WL 242781, at *16  (E.D. La. Jan 15, 2020) (holding that parties would suffer "[i]rreparable [i]njury" from the "difficulties in presenting [their case]" that would result "because of a deadline posed by the statute of limitations.") (internal citations omitted).[7]

The Bankruptcy Court disregarded this risk too, concluding that the Estate's claims against the Outside Investors are "in some ways preserved" because both the Collateral Agent and Neugebauer "each have complaints on file with regard to the causes of action that they claim they own." (App. 1274-75) But these lawsuits pertain only to claims that the Collateral Agent and Neugebauer assert *individually* against the Outside Investors. The Bankruptcy Court did not explain how these lawsuits serve to preserve the *Estate's* claims

---

[7] The Fifth Circuit also recognized as much in this case. After the Bankruptcy Court denied the Debtor's and Collateral Agent's motion to compel the Trustee to file certain claims before February 8, 2025 (the two-year anniversary of the filing of the Chapter 7 petition), the Debtor filed an emergency petition for writ of mandamus in the Fifth Circuit.  *In re With Purpose, Inc*., No. 10248 (unpublished order).  That Court denied the petition, in part because "Petitioner has other means to attain the relief requested—indeed, Petitioner has moved the bankruptcy court and could move the district court for relief." (*Id*.)

22

against those parties. Accordingly, the Bankruptcy Court's effort to minimize the irreparable harm that would result in the absence of a stay is unpersuasive.

### C.    The balance of harms between the parties favors a stay.

While the Debtor and the Collateral Agent will be forced into an untenable situation if they are not granted equitable relief pending appeal, there is no evidence that the Trustee or JIG will suffer any harm at all if such relief is granted for the limited duration of an appeal. Preventing JIG from exercising control over Estate causes of action involving the Outside Investors for the limited duration of the appeal will cause no irreparable harm. Indeed, the equitable relief Appellants seek would actually facilitate those causes of action and add value to the Estate by enabling someone to timely file them.

The Bankruptcy Court again concluded otherwise, raising concern that staying the JIG Settlement Order and compelling the Trustee to bring suit against JIG or the Outside Investors would "breach" the JIG Settlement Agreement. (App. 1277) But nothing suggests any breach will occur. Nothing in the JIG Settlement Agreement actually forecloses the assertion of any claims the Estate has against JIG or the Outside Investors or requires that those claims be released or compromised. The Agreement merely transfers *control* over Estate causes of action to JIG. Ordering the Trustee to bring suit against the Outside Investors, or staying the JIG Settlement Order to the extent it permits JIG to compromise the claims, will not cause any "breach" either—because the Trustee is not being forced to *prosecute* any claims that JIG "does not seek to bring." (App.  1274) He is being ordered only to *preserve* those claims by merely filing them (or allowing someone else to do so) before the Orders on Appeal are potentially reversed.

The Bankruptcy Court's concern that Appellants' requested relief "will harm the causes of action [the Trustee and JIF *do*] seek to bring" against Neugebauer and the directors aligned with him is likewise off-base. (App. 1274) While the Bankruptcy Court worried that bringing these claims in addition to the claims against the Outside Investors raise a risk of "contradictory positions" and "counter-narratives" (CR 1272, 1278), there is no inconsistency in claiming that *all* of these parties allegedly caused or contributed in some way to GloriFi's demise. Indeed, the Trustee himself once asserted that colorable causes of action exist against everyone "to whom the proverbial finger had been pointed." (App. 207) And while the Bankruptcy Court noted that a stay would "increase expenses" and cause "delays" in the lawsuits the Trustee and JIG are planning (*id.*), that ignores the limited, targeted relief that Appellants seek, which does not try to stop the Trustee or JIG from filing whatever suits they believe are meritorious.

### D.    The public interest, and the interest of secured lenders, favors Appellants' requested equitable relief.

The public interest likewise favors equitable relief pending appeal. The Bankruptcy Court's decisions at issue in this case set dangerous precedents, many of which have the potential to affect the rights of debtors and secured lenders nationwide. Congress has directed that a debtor's election to convert a Chapter 7 dissolution to a Chapter 11 reorganization is virtually automatic—because a reorganization almost always yields a better recovery for creditors than a fire sale of assets. Such an election should be even easier to obtain when it is supported by a reorganization plan, a former bankruptcy judge serving as CRO, and secured creditors who believe it will provide them the best value for

their claims. Under no circumstances should bankruptcy courts be empowered to deny such a conversion and place their own judgment above those who actually have a stake in the Estate. And bankruptcy courts should never be entitled to exalt their own generalized notions of "equity" over the plain language of the statutes Congress enacted.

In addition, under no circumstances should a third party with patent conflicts of interest be permitted to purchase, for nominal value, control over valuable and colorable causes of action *against itself and its allies* that it can then extinguish or compromise for nominal sums at its own discretion rather than assert them for the benefit of the estate. These are plainly abuses of the bankruptcy system, which was designed to provide a "fresh start" for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)—not to offer a means for non-debtors to purchase absolution from other non-debtors without offering the Estate anything in return.

A reviewing court, whether it be this Court or the Fifth Circuit, should be entitled to consider these questions without the cloud of inequitable conduct and irreparable harm that will likely arise in the absence of equitable relief. Accordingly, the public interest favors granting the equitable relief that Appellants seek.

## CONCLUSION

For these reasons, the Court should grant this motion for stay and injunction, ordering the relief specifically enumerated on page 4 above and directing the Trustee either to file suit against the Outside Investors or assign the causes of action against the Outside Investors to someone who will do so.

25

Respectfully submitted,

*/s/ Frank J. Wright*                          */s/ Jeffrey S. Levinger*

**Frank J. Wright**                            **Jeffrey S. Levinger**
State Bar No. 22028800                         State Bar No. 122588300
frank@fjwright.law                             jlevinger@levingerpc.com
**Jeffery M. Veteto**                          **J. Carl Cecere (Of Counsel)**
State Bar No. 24098548                         State Bar No. 24050397
jeff@fjwright.law                              ccecere@cecerepc.com
**Law Offices of Frank J.**                    **Levinger PC**
  **Wright, PLLC**                    1700 Pacific Ave., Suite 2390
1800 Valley View Lane, Suite 250               Dallas, TX 75201
Farmers Branch, TX 75234                       Telephone: 214-855-6817
Telephone: (214) 935-9100                      Facsimile: 214-817-4509

*Attorneys for Appellant*
*With Purpose, Inc.*

26

### CERTIFICATE OF SERVICE

The undersigned certifies that on February 7, 2025, the foregoing Motion was served on the following by the CM/ECF System for the Northern District of Texas:

Davor Rukavina
drukavina@munsch.com
Thomas D. Berghman
tberghman@munsch.com
Brenda P. Funk
bfunk@munsch.com
Conor P. White
cwhite@munsch.com
Munch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201


Paul M. Rosenblatt
prosenblatt@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Stret NE, Suite 2800
Atlanta, GA 30309

2001 Ross Avenue, Suite 4400
Dallas, Texas 75201

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

27